DAVID M. WATSON, II,

          Plaintiff;

      v.

BLESSED NDI, CENTURION OF
DELAWARE, LLC, AND NURSE "D,"

          Defendants.

Civil Action No. 20-1220-LFR

## MEMORANDUM ORDER

### I.    INTRODUCTION

Plaintiff David M. Watson, II (Watson) brought this civil rights action pursuant to 42 U.S.C. § 1983, alleging a violation of his constitutional rights by defendants Centurion of Delaware, LLC (Centurion) and Blessed Ndi (Nurse Ndi).[1]

Watson, a former inmate of the James T. Vaughn Correctional Center (JTVCC), claims the defendants were deliberately indifferent to his serious medical condition.  In response, the defendants filed a motion to dismiss the complaint pursuant to Fed. R. Civ.

---

[1] Watson also named Nurse "D" as a defendant but, as far as this court is aware, s/he has not been identified and served the operative complaint.

Watson alleges that Centurion of Delaware, LLC provides correctional healthcare services for inmates in the Delaware Department of Corrections and that, "upon information and belief," Defendant Blessed Ndi is a nurse employed by Centurion of Delaware, LLC. (D.I. 23 at 2).

P. 12(b)(6).  The court has jurisdiction over the present suit pursuant to 28 U.S.C. § 1331.

For the following reasons, the defendants' motion to dismiss is granted.

## II.    BACKGROUND

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the court must accept as true all material allegations of the complaint and construe the complaint in favor of the plaintiff.  *See Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc.*, 140 F.3d 478, 483 (3d Cir. 1998).  The following facts are therefore taken from Watson's amended complaint filed November 1, 2021.

On or about May 15, 2020, Watson bought a pair of earbuds from the JTVCC commissary.  A piece of mesh from the earbuds became shallowly lodged in his left ear. Approximately five days later, Watson had a sick call appointment to have the mesh removed.  Before attending the appointment, Watson asked inmate Allen Foote if the mesh was still visible, and Foote confirmed that it was (D.I. 23 at 2).

At the appointment Watson was treated by defendant Nurse Ndi, who appeared frustrated with him and accused him of filing for frivolous sick calls.  Upon hearing Watson's complaint, Nurse Ndi "roughly jammed" a scope into his ear and reported there was nothing visible in his ear (D.I. 23 at 3).  Watson returned to his housing unit and asked Foote if he could still see the mesh; Foote reported that he could not (D.I. 23 at 3).

In the following weeks, Watson experienced constant pain in his left ear, as well as ringing in both ears.  On July 14, 2020, Watson filed a medical grievance reporting the pain.  He received no response.  Approximately a week later Watson was transferred to the Delaware Psychiatric Center (DPC), where he requested that his ear be re-examined.  At

2

the DPC, Dr. Donahue found that there was mesh in his ear, lodged against his eardrum. Watson was told that an appointment would be made to remove the mesh. The pain continued and, over the course of the next month, Watson asked repeatedly about the date of the appointment (D.I. 23 at 3-4).

On or about August 23, 2020, Watson asked DPC Nurse "D" about his impending appointment. She responded by asking Watson about a prior occasion when he had escaped from custody. Watson described the escape to Nurse "D," who in turn told a doctor that Watson was planning to escape. In response, his sick call appointment was cancelled. Watson continued to complain about the pain and, in or around September 2020, had a specialist appointment where the mesh was removed from his left ear (D.I. 23 at 4).

Watson continued to suffer from ringing in his ears. Approximately two months after having the mesh removed, Watson attended at sick call with Dr. Donahue and complained of the pain. The doctor informed him that nothing could be done to alleviate his symptoms (D.I. 23 at 4).

Watson contends he received inadequate medical treatment that violated his federal constitutional rights.

### III.    STANDARD OF REVIEW

The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits of the case. *Woulard v. Food Service,* 294 F.Supp.2d 596, 601 (D.Del. 2003) (citing *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993)). A complaint "should be dismissed only if, after accepting as true all of the facts alleged in the complaint, and drawing all reasonable inferences in the plaintiff's favor, no relief could be granted under

3

any set of facts consistent with the allegations of the complaint." *Trump Hotels*, 140 F.3d at 483.

A complaint must demonstrate an entitlement to relief with facts; the facts must allow the court to draw a reasonable inference that the defendants are liable for the injury alleged.   *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   If the reviewing court can infer only the "sheer possibility that a defendant has acted unlawfully," the motion to dismiss the complaint should be granted. *Id.*, (citing *Twombly*, 550 U.S. at 557).   If instead the alleged facts "show" the plaintiff is entitled to relief, the motion must be denied. *Id.* at 679 (citing Fed. R. Civ. P. 8(a)(2)).

## IV.   DISCUSSION

a.      Exhaustion of Administrative Remedies

Defendants Nurse Ndi and Centurion filed their motion to dismiss on November 30, 2021 (D.I. 25).  They first argue the complaint should be dismissed because Watson failed to exhaust his administrative remedies prior to filing this action, as required by the Prison Litigation Reform Act 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under [§ 1983] by a prisoner . . . until such administrative remedies as are available are exhausted.").  *See also Nyhuis v. Reno*, 204 F.3d 65, 67 (3d Cir. 2000). Section 3626(g)(2) of Title 18 of the United States Code defines prison conditions as "the effects of actions by government officials on the lives of persons confined in prison[.]" "[A]ctions under this clause relate to the environment in which prisoners live, the physical

conditions of their environment, and the nature of the services provided therein." *Booth v. Churner, C.O.*, 206 F.3d 289, 294 (3d Cir. 2000).

It cannot be reasonably argued that medical treatment does not relate to "the nature of services provided." *Id.* Therefore, Watson was required to exhaust the available administrative remedies before filing his complaint.

Here, Watson did not attach his grievance, or the relevant grievance procedures, to his complaint. He did state, however, that he filed his grievance on July 14, 2020, and received no response from the prison (D.I. 23 at 4). Therefore, the grievance was filed sixteen months before the defendants filed their motion to dismiss, and there is no indication the prison authorities have ever responded. This court has held a complaint should not be dismissed for failure to exhaust administrative remedies when a plaintiff's grievance was "ignored by prison authorities under the grievance procedure." *Woulard*, 294 F. Supp. 2d at 602.

In assessing Watson's complaint, this court must infer the sixteen-month lack of a response exceeded "the amount of time allowed for prison authorities to respond under said grievance procedure." *Id.* Accordingly, the court finds Watson's complaint cannot be dismissed for failure to exhaust his administrative remedies and will address the merits of his § 1983 claim.

b.      Sufficiency of Plaintiff's Claim under 42 U.S.C. § 1983

*(i) Medical care*

The State of Delaware has an obligation under the Eighth Amendment to provide "adequate medical care" to individuals incarcerated in its prisons. *Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979). To state a viable Eighth Amendment claim for inadequate medical care, a prisoner must allege the prison's medical personnel acted with deliberate indifference to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 104 -05 (1976).

Deliberate indifference is sufficiently alleged if the facts show the medical staff knew of and disregarded an excessive risk to the prisoner's health and safety. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Mere medical malpractice, or "an inadvertent failure to provide adequate medical care," does not rise to the level of deliberate indifference. *Estelle*, 429 U.S. at 105. Rather, the prison official must possess the requisite mental state; the facts must show they acted with either actual intent or recklessness in order to allege deliberate indifference. *Farmer*, 511 U.S. at 838 -39.

The distinction between deliberate indifference and malpractice is not always straightforward, but "it is well established that as long as [the medical professional] exercises professional judgment [their] behavior will not violate a prisoner's constitutional rights." *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990).

In light of this standard, this court finds Watson has not proffered sufficient facts to establish Nurse Ndi was deliberately indifferent to his medical needs. Even drawing all inferences in his favor, Watson did not allege a serious medical condition where the denial

or delay of treatment risked "a life-long handicap or permanent loss." *Monmouth County Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).   But even if the mesh in his ear posed such a risk, Nurse Ndi exercised her professional judgment in administering treatment.   Watson asked for and received treatment within days of his injury.   Nurse Ndi attempted to locate the mesh with a scope.   That Watson disagreed with her method, or found her care inadequate or improper, does not support an Eighth Amendment claim. *Norris v. Frame*, 585 F.2d 1183, 1186 (3d Cir. 1978); *McCray v. Williams*, 357 F.Supp.2d 774, 781 (D. Del. 2005).

Furthermore, Watson does not allege that Nurse Ndi or any of the JTVCC's medical personnel knew, much less disregarded, that he was in "constant, sharp pain" after his sick call appointment (D.I. 23 at 3).   Watson filed a grievance two months after his appointment with Nurse Ndi and was transferred to the DPC six days later.   Watson does not allege Nurse Ndi and the medical staff at JTVCC neglected or delayed additional treatment after becoming aware of his condition.   Based on the facts stated in the complaint, Watson's § 1983 claim regarding Nurse Ndi does not rise to a constitutional violation and is therefore dismissed.

### (ii)    Custom or policy

Corporations such as Centurion that contract with the state of Delaware to provide prison medical services are not liable for the acts of their employees named in § 1983 claims.   *Natale v. Camden County Corr. Facility*, 318 F.3d 575, 583 -84 (3d Cir. 2003). Such corporations can only be held directly liable if they established or maintained a policy or custom that is responsible for violating the plaintiff's constitutional rights. *See Monell*

*v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978).  The policies or customs must be so inadequate that the mere decision to implement them demonstrates deliberate indifference on the behalf of the cooperation.  *McCray v. First State Medical System*, 379 F.Supp.2d 635, 638 (D. Del. 2005) (citing *Swann by Carello v. Daniels*, 923 F.Supp. 626, 633 (D. Del. 1995)).

Watson has not identified any policies or customs implemented by Centurion, much less ones that caused a violation of his constitutional rights.  His complaint provides no facts to show how Centurion's decisions regarding his medical treatment resulted in deliberate indifference.  Furthermore, this court found that Nurse Ndi's treatment of Watson did not violate his Eighth Amendment right to adequate medical care.  Because Watson failed to allege deliberate indifference, Centurion cannot be liable on the theory that it established or maintained an unconstitutional policy or custom.  *Cessna v. Correctional Medical Serv.*, 794 F.Supp.2d 544, 550 (D. Del. 2011).  Accordingly, Watson has failed to state a viable § 1983 claim against Centurion.

## V.   CONCLUSION

For the reasons stated, the court will GRANT the defendants' Motion to Dismiss the First Amended Complaint.

Entered this 28 day of January, 2022

L. Felipe Restrepo
_____
United States Circuit Judge